## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| E&T ELECTRIC LLC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Magistrate Judge Beth W. Jantz |
| v. ) | |
| ) | No. 24-cv-1192 |
| OFLC CERTIFYING OFFICER, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

For the reasons discussed below, the Court recommends that Plaintiff's Motion for Preliminary Injunction [3] be denied. Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the District Judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.

### BACKGROUND

Plaintiff E&T Electric LLC ("Plaintiff") is a business "engaged in electrical new construction installation work, maintenance, and repair" based in Greeley, Colorado. (Dkt 1 at ¶ 2; Dkt. 3 at 5.) Plaintiff entered into "six interrelated contracts with American Heritage Packaging" for electrical work at American Heritage Packaging's new plant in Missouri;[1] Plaintiff asserts that

---

[1] Plaintiff interchangeably calls the company it contracted with "American Homeland Packaging" and "American Heritage Packaging." (*See, e.g.*, Dkt. 3 at 5). The Court has used American Heritage Packaging in this Report and Recommendation for consistency.

this is a significant project for Plaintiff and is eight times larger than any project for Plaintiff since 2021 and four times as many man-hours. (Dkt. 3 at 5.)

In response to this contracted project, on December 26, 2023, Plaintiff began the process of applying for H-2B visas to hire temporary non-agricultural foreign workers by petitioning "the [Office of Foreign Labor Certification] Certifying Officer (CO) for a temporary labor certification for 12 electrical helpers to work nine months on this project beginning March 11, 2024." (Dkt. 3 at 6, 10.) Plaintiff asserted that its need for temporary workers constituted a "one-time occurrence" as defined in 8 C.F.R. § 214.6(h)(6)(ii)(B)(1). (Dkt. 3 at 10.) In its application, Plaintiff explained that it had a staff of permanent workers and planned to hire additional permanent staff, but the size of the American Heritage Packaging project required additional temporary workers who would only be employed for the duration of the project. (Dkt. 3 at 11-12.)

On January 3, 2024, the CO issued a Notice of Deficiency, stating that Plaintiff's application did not demonstrate a "temporary need," and requesting additional supporting documentation for Plaintiff to meets its burden; Plaintiff responded to the Notice of Deficiency on January 17, 2024. (Dkt. 3 at 12.) On February 7, 2024, the CO denied Plaintiff's application, finding that Plaintiff "failed to show it had a 'temporary need' for these workers" as required by Section 214.6(h)(6)(ii)(A). (Dkt. 3 at 6.) In relevant part, the CO denied Plaintiff's application, reasoning:

> However, the employer has also explained that its business normally works contract to contract. Despite the size of the contracted project with American Heritage Packaging, this project appears to be within the scope of the services the employer provides. Based upon the employer's statement on page 2 of its [Notice of Deficiency] response document, its business is in the electrical contracting field, and thus the employer's business practice appears to be contingent on securing and fulfilling contracts. Therefore, the employer appears to have a permanent, ongoing need for workers, even though its contracts and projects may be of a limited duration.

2

(Dkt. 1-3 at 425.)

Additionally, the CO found that Plaintiff had failed to establish that the visas were the result of a "one-time occurrence" pursuant to Section 214.6(h)(6)(ii)(B)(1), writing:

> Thus, it remains unclear how the employer can state that providing such workers in the stated industry for one project is not part of its business model when meeting its client's employment needs, regardless of the occupation, appears to be the center of its business model. Therefore, it does not appear that this contract/project represents a unique event in its business operations. The employer is in the business of seeking, securing, and implementing construction projects on an on-going basis, regardless of the size or requested occupation of the project. The employer's explanation that this project is much like the example of a shipbuilder found in Exhibit 11 of the NOD response, is incorrect. The Department clearly indicates following the example that "the Department would not consider it a one-time occurrence if the same employer filed serial requests for H–2B workers for each ship it built." The employer's business model is based on obtaining multiple projects, and therefore cannot establish a one-time need by focusing on only one of many such contracts. Unlike the hypothetical example of a shipbuilder, the employer failed to provide sufficient supporting documentation to clearly demonstrate to the Department how this project is above and beyond the scope of the employer's operations and workload.
>
> Although the employer has submitted copies of purchase orders, contracts, and a summary of all projects in the area of intended employment, these documents simply establish that the employer has work that it is currently contracted to perform and establishes that it has performed electrical construction work in the past. The aforementioned documentation also provides the size of the current project and the size projects for the previous three calendar years. However, the employer's copies of purchase orders, contracts, and its summary of all projects in the area of intended employment from 2021-2024 does not establish that the project with American Heritage Packaging represents a unique event above and beyond the scope of its business operations and workload. Therefore, said project does not establish that it is a unique non-recurring situation of short duration, that has created a one-time need for temporary workers.

(Dkt. 1-3 at 426-27.)

Additionally, the CO further explained elsewhere in the denial:

> The employer stated that, "[t]his is only the second time in the Company's 20-year history that it [has] had to petition for H-2B workers, and both times it was a result of a temporary event of short duration," which does not help establish a one-time occurrence. The employer clearly has employed workers to perform the services or labor in the past and will need workers to perform this in the future. Furthermore, since the employer has temporary workers "who will be terminated when their current projects are completed" and has previously petition (sic) for foreign workers with the Department, it does not establish that the employer's need is unique or establish how it is above and beyond the employer's normal business operations.

(Dkt. 1-3 at 425-26.)

Plaintiff did not appeal the denial to the Board of Alien Labor Certification Appeals ("BALCA"), leaving the CO's the final decision of the United States Department of Labor ("DOL"). 8 C.F.R. § 655.53.[2] Plaintiff filed the instant suit alleging that the CO's decision was

---

[2] Much of the parties' briefs are committed to arguing whether Plaintiff failed to exhaust its administrative remedies. The Court does not believe that there is an exhaustion requirement in this case. Under the APA, "any definitive agency action is considered 'final,' and therefore reviewable, unless the agency's regulations require exhaustion as a prerequisite to judicial review." *Shawnee Trail Conservancy v. United States Dept. of Agriculture*, 222 F.3d 383, 389 (7th Cir. 2000). However, "[w]hen there is no statute or regulation requiring exhaustion prior to judicial review, the Court has no authority to impose an exhaustion requirement. . . . As such, the Court must look to the relevant statutory text to determine what exhaustion requirements, if any, apply in a particular case." *Lis Trucking, Inc. v. Walsh*, Case No. 20-cv-4474, 2022 WL 1404817, at *4 (N.D. Ill. May 4, 2022) (internal citation omitted). The cases cited by Defendant in support of its exhaustion argument are distinguishable because in those cases, the relevant regulation expressly states that failure to seek administrative review "constitutes a failure to exhaust administrative remedies." *See id.*, at *5 (citing 20 C.F.R. §656.24(e)(3) (which provides that the Final Determination form must "advise that failure to request review within 30 days of the date of the determination, as specified in §656.26(a), **constitutes a failure to exhaust administrative remedies.**") (emphasis added)); *see also Star Way Lines v. Walsh*, 596 F. Supp. 3d 1142, 1153-54 (N.D. Ill. 2022) (same). No such language referencing exhaustion of administrative remedies exists in the regulations at play here, and the Court will not create an exhaustion requirement where one does not exist in the regulations. *See* 8 C.F.R. §655.53(c) ("[I]f the employer does not request administrative review in accordance with §655.61, the denial is final and the Department of Labor will not accept any appeal on that Application for Temporary Employment Certification.") Even

4

not "in accordance with the law" and seeking to have the decision set aside pursuant to 5 U.S.C. §706(2). (Dkt. 1.) On February 14, 2024, Plaintiff filed the instant motion for preliminary injunction, and the District Judge set a briefing schedule. [Dkt. 3, 8.] On February 27, 2024, the motion for preliminary injunction was referred to this Court for a report and recommendation, which became ripe with the filing of Plaintiff's reply on February 28, 2024.

## DISCUSSION

I.  **H-2B Visa Regulatory and Statutory Framework**

The Immigration and Nationality Act of 1952 "established a framework for immigration regulations that permit the admission of temporary foreign workers into the United States." *Guam Contractors Assoc. v. Sessions*, Civil Case No. 16-00075, 2017 WL 3447797, at *1 (D. Guam Aug. 11, 2027). This case involves the H-2B visa program, "which permits employers to hire and bring nonimmigrants to the United States to fill temporary, nonagricultural jobs." *Id.* "An H-2B classification applies to an alien who is coming temporarily to the United States to perform nonagricultural work of a temporary or seasonal nature, if there are not sufficient workers who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such services or labor." 8 C.F.R. §214.2(h)(1)(D). Employers who seek to hire foreign workers under the H-2B visa program must first apply for and receive labor certification from the DOL, which is reviewed by a Certifying Officer ("CO") in the Office of Foreign Labor Certification ("OLFC"). 8 C.F.R. § 214.2(h)(6)(iii), 8 C.F.R. § 214.2(h)(6)(iv)(A). If the employer receives the labor certification from the OFLC, the

---

if the Court is incorrect on this point, it should not affect the disposition of the instant motion because, as discussed below, the Court does not believe Plaintiff has demonstrated a likelihood of success on the merits.

next step is to file an H-2B petition with the United States Citizenship and Immigrations Services, which is reviewed for compliance with all regulatory requirements. 8 C.F.R. § 214.2(h)(6)(iii)(E).

The relevant regulation – jointly issued by the DOL and Department of Homeland Security – governing the issuance of H-2B visas in this case is 8 C.F.R. § 214.2(h)(6)(ii). Subsection A of that regulation defines what qualifies as "temporary services or labor" as follows: "[t]emporary services or labor under the H–2B classification refers to any job in which **the petitioner's need for the duties to be performed by the employee(s) is temporary, whether or not the underlying job can be described as permanent or temporary**." 8 C.F.R. § 214(h)(6)(ii)(A) (emphasis added). "The employer must establish that the need for the employee will end in the near, definable future," and "[t]he petitioner's need for the services or labor shall be a one-time occurrence, a seasonal need, a peak load need, or an intermittent need." 8 C.F.R. §214.2(h)(6)(ii)(B). The requirements of Subsection A and Subsection B must both be met for the DOL to issue a labor certification: "an employer seeking certification has the burden of showing its need for workers is temporary ***and*** that the request is a one-time occurrence, seasonal, peakload, or intermittent need." *Kiewit Offshore Servs v. United States Dept. of Labor*, Civil Action No. 4:22-cv-3716, 2023 WL 417486, at *4 (S.D. Tex. Jan. 25, 2023) (emphasis added).

As noted above, Plaintiff in this case asserted that its need for H-2B workers was due to a "one-time occurrence." [Dkt. 1-3 at 426.] There are two ways to demonstrate a one-time occurrence under the regulation. First, the employer can "establish that it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future." 8 C.F.R. § 214.2(h)(6)(ii)(B)(1). Alternatively, the petitioning employer can show "that it has an employment situation that is otherwise permanent, but a

6

temporary event of short duration has created the need for a temporary worker." 8 C.F.R. §214.2(h)(6)(ii)(B)(1).

On December 19, 2008, the DOL issued a final rule providing guidance on how to interpret the relevant regulations, including the following example of a one-time occurrence:

> Neither the Department nor DHS is changing the long-established definition of one-time occurrence which encompasses both unique non-recurring situations but also any ''temporary event of a short duration [that] has created the need for a temporary worker.'' For example, an employer could utilize the H–2B program to secure a worker to replace a permanent employee who was injured. Further, if that permanent employee, upon returning to work, subsequently suffered another injury, the same employer could utilize the H– 2B program again to replace the injured employee on the basis of a one-time occurrence. **A one-time occurrence might also arise when a specific project creates a need for additional workers over and above an employer's normal workforce. For example, if a shipbuilder got a contract to build a ship that was over and above its normal workload, that might be a one-time occurrence. However, the Department would not consider it a one-time occurrence if the same employer filed serial requests for H–2B workers for each ship it built.**

Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than Agriculture or Registered Nursing in the United States (H-2B Workers), and Other Technical Changes; Final Rule, 73 Fed. Reg. 78,020, 78,026 (Dec. 19, 2008).

## II. Preliminary Injunction Standard

"Determination of whether a movant is entitled to a preliminary injunction involves a multi-step inquiry." *Intl' Assoc. of Firefighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 446 (7th Cir. 2022). First, a party seeking a preliminary injunction must show (1) some likelihood of succeeding on the merits, and (2) that it will suffer "irreparable harm" if the preliminary injunction is not granted. *Id.* (citing *Cassell v. Snyders*, 990 F.3d 539, 544–45 (7th Cir. 2021)). "A movant's showing of likelihood of success on the merits must be 'strong'" and "normally

includes a demonstration of how the applicant proposes to prove the key elements of its case." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) ("A preliminary injunction is an extraordinary remedy"). If the movant satisfies the first two elements, the court must then consider: "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id*. (quoting *Cassell*, 990 F.3d at 545).

### III. Likelihood of Success on the Merits

The Court believes that the CO's decision was not arbitrary, capricious, or contrary to law, which is the standard of review, and, therefore, Plaintiff is not likely to succeed on the merits of its claims. As such, the Court recommends that the motion for preliminary injunction be denied. Regarding the standard of review, the Administrative Procedures Act ("APA") allows a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be. . .arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of our review in this regard is narrow, and we must not substitute our judgment for that of the agency." *Madison v. United States Dept. of Labor*, 924 F.3d 941, 946 (7th Cir. 2019) (citing *F.C.C. v. Fox Television Stations, Inc*., 556 U.S. 502, 513, 129 S. Ct. 1800, 1810, 173 L.Ed.2d 738 (2009)). "The agency's obligation is to examine the relevant evidence and articulate a satisfactory rationale for its action that draws a rational connection between the underlying facts and the outcome." *Id.* (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43, 103 S. Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)). "Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Alaska Dep't of*

*Env't Conservation v. E.P.A.*, 540 U.S. 461, 497, 124 S. Ct. 983, 1006, 157 L. Ed. 2d 967 (2004) (quoting *Bowman Transp., Inc. v. Arkansas—Best Freight System, Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

Here, the Court believes that the CO's denial of Plaintiff's petition for a labor certification was not arbitrary, capricious, or contrary to law, and adequately articulated a rationale for its action that draws a rational connection between the underlying facts and the outcome. The CO articulated several reasons for its denial. First, the CO wrote that the petition should be denied because the nature of Plaintiff's business – working contract to contract in the construction industry – suggested that Plaintiff had a "permanent ongoing need for workers, even though its contracts and projects may be of a limited duration."[3] [Dkt. 1-3 at 425.] In other words, the CO found that Plaintiff's petition failed to satisfy the regulation's definition of "temporary services or labor," which required that the "need for the duties to be performed by the employee(s) is temporary, whether or not the underlying job can be described as permanent or temporary." 8 C.F.R. §214.2(h)(6)(ii)(A). Thus, even if the electrician helper jobs Plaintiff wants to fill with H-2B visas and this particular large project are temporary, the CO found that the contract-to-contract nature of Plaintiff's business would create consistent churn and a permanent need to fill jobs with electrical helpers, such that the *need* was not temporary, and "need" is the operative part of the

---

[3] Plaintiff's argument on this issue conflates two different requirements. Plaintiff argues that the CO committed error because Section 214.2(h)(6)(ii)(B)(1) says a one-time occurrence includes "an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker." (Dkt. 3 at 16.) However, as noted above, the relevant regulation requires the employer to meet two conditions: "an employer seeking certification has the burden of showing its need for workers is temporary **_and_** that the request is a one-time occurrence . . . ." *Kiewit Offshore Servs v. United States Dept. of Labor*, Civil Action No. 4:22-cv-3716, 2023 WL 417486, at *4 (S.D. Tex. Jan. 25, 2023) (emphasis added). The CO's findings in this section of the denial concern the first prong – that Plaintiff's need for workers is temporary; it was not related to whether the temporary need was caused by a one-time occurrence. Plaintiff's arguments therefore are misplaced on this point.

9

statute. *See* 8 C.F.R. §214.2(h)(6)(ii)(A) ("Temporary services or labor under the H–2B classification refers to any job **in which the petitioner's need for the duties to be performed by the employee(s) is temporary, whether or not the underlying job can be described as permanent or temporary**") (emphasis added).

In the denial, the CO accurately discussed the relevant statutory and regulatory requirements and the nature of Plaintiff's business and other facts posited in Plaintiff's petition, before finding that Plaintiff had an ongoing need for electrical helpers that did not satisfy the regulatory requisite of a temporary need. This ruling was consistent with BALCA decisions finding that companies seeking to hire H-2B visa workers because of a larger-than-usual contract have a permanent need for workers and cannot satisfy the definition of "temporary need" because of the contract-to-contract nature of their business model. *See, e.g., In re Cajun Constructors, Inc.*, BALCA Case No. 2009-TLN-00096, at 11-12 (Oct. 9, 2009) (ALJ ruling "that [employer's] need for such workers therefore is not temporary" because the large construction project "appear[ed] to be only one of many projects that [employer] ha[d] worked on over many years as a construction services company"). The Court believes that the CO's application of the regulation was rational on this basis. *See Kiewit*, 2023 WL 417486, at *4-5 (denying motion for preliminary injunction because petitioner was unlikely to succeed on the merits where BALCA ALJ found that employer's need for workers was permanent and not temporary, and explaining that, "[a]lthough reasonable minds could arguably differ on the conclusions DOL rendered, Plaintiff's disagreement with Defendants' assessment of the evidence and its ultimate conclusion does not mean that Defendants' denials or consideration process was arbitrary and capricious").

Next, the CO also determined that Plaintiff failed to prove the need qualified as a "one-time occurrence" under 8 C.F.R. § 214.2(h)(6)(ii)(B)(1). Plaintiff's motion for preliminary

10

injunction focuses exclusively on the second prong of Section 214.2(h)(6)(ii)(B)(1) – *i.e.*, "that it has an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker" – and the Court will limit its discussion to that portion of the regulation.[4]

In deciding that Plaintiff had failed to meet the necessary criteria to show a "one-time occurrence," the CO reviewed Plaintiff's submissions and rejected Plaintiff's argument that the American Heritage Packaging project was significantly different than Plaintiff's normal business, reasoning "that the type of electrical construction work being performed for this contract is not new to its business operations, as it has performed plant expansion work from time to time on a smaller scale." (Dkt. 1-3 at 426.) The CO further wrote:

> Although the employer has submitted copies of purchase orders, contracts, and a summary of all projects in the area of intended employment, these documents simply establish that the employer has work that it is currently contracted to perform and establishes that it has performed electrical construction work in the past. The aforementioned documentation also provides the size of the current project and the size projects for the previous three calendar years. However, the employer's copies of purchase orders, contracts, and its summary of all projects in the area of intended employment from

---

[4] Because the Court believes that the CO adequately discussed this second type of "one-time occurrence" in the regulation, the Court rejects Plaintiff's argument that the CO's decision rendered this portion of the regulation mere surplusage. (Dkt. 3 at 19.) The CO discussed both types of "one-time occurrence" in the denial decision. As discussed herein, the CO adequately considered the "temporary event of short duration" type of "one-time occurrence." The CO also discussed whether Plaintiff established "that it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future." 8 C.F.R. § 214.2(h)(6)(ii)(B)(1). The CO found that Plaintiff did not meet this definition of "one-time occurrence" because "[a]lthough the employer is attesting that the construction of a new power plant is an extraordinary one-time occurrence due to it being a large project, which it has no reason to expect will reoccur in the foreseeable future, the employer is reminded that its need for workers may vary depending on the timing and scope of the individual contracts that it secures. As a result, there is no guarantee that the employer will not have opportunities for large electrical construction projects in the future." (Dkt. 1-3 at 425.) Because the CO discussed all relevant portions of 214.2(h)(6)(ii)(B)(1), the decision did not render any language in the regulation surplusage.

> 2021-2024 does not establish that the project with American Heritage Packaging represents a unique event above and beyond the scope of its business operations and workload. **Therefore, said project does not establish that it is a unique non-recurring situation of short duration, that has created a one-time need for temporary workers.**

(Dkt. 1-3 at 427 (emphasis added).)

The CO reviewed the materials Plaintiff provided to support its petition and determined that the evidence failed to show that Plaintiff was experiencing a temporary event of short duration that created the need for temporary workers. For example, the CO found that the materials Plaintiff submitted revealed that it had hired temporary workers between October 2022 and October 2023, and had already applied once before for H-2B visas. (Dkt. 1-3 at 425.) From this, the CO determined that Plaintiff's records showed that the American Heritage Packing Project was in line with its normal business of providing electrical construction work, and that Plaintiff had an ongoing need for temporary workers for the preceding year, and had already previously filed an application to hire workers on H-2B visas. (Dkt. 1-3 at 425-26.) The Court cannot say that this fails to draw a rational conclusion from the evidence. It is reasonable to decide that these facts paint the picture of a company that has a recurring need for workers as it goes from contract to contract, and the need for these workers is not the result of a temporary event of short duration. Plaintiff does not claim that the CO failed to accurately relay the facts of the case; Plaintiff simply does not like the conclusion that the CO drew from those facts and wishes for the Court to substitute its opinion for the reasoned conclusion drawn by the CO, which is beyond the scope of an APA review. *See Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497, 124 S. Ct. 983, 1006, 157 L. Ed. 2d 967 (2004) ("Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path

may reasonably be discerned.'"). For the reasons discussed above, the Court believes the CO's conclusion was rational and not contrary to law.[5]

Finally, Plaintiff maintains that the CO's denial was contrary to law because Plaintiff's situation is analogous to the hypothetical ship builder example cited above. (Dkt. 3 at 17-19.) Plaintiff raised the same point in its petition to the DOL, but the CO rejected that argument:

> The employer's explanation that this project is much like the example of a shipbuilder found in Exhibit 11 of the NOD response, is incorrect. The Department clearly indicates following the example that "the Department would not consider it a one-time occurrence if the same employer filed serial requests for H–2B workers for each ship it built." The employer's business model is based on obtaining multiple projects, and therefore cannot establish a one-time need by focusing on only one of many such contracts. Unlike the hypothetical example of a shipbuilder, the employer failed to provide sufficient supporting documentation to clearly demonstrate to the Department how this project is above and beyond the scope of the employer's operations and workload.

(Dkt 1-3 at 426.)

In reviewing the CO's denial, the Court sees a viable distinction made by the CO between the ship builder and Plaintiff. The CO determined that, unlike the ship builder, the American Heritage Packaging project was not above and beyond the scope of Plaintiff's normal operations and workload. (Dkt 1-3 at 426.) The CO discussed how the evidence showed that, in the past, Plaintiff's staff had been "augmented by temporary workers when a particularly large project appears which is above and beyond the Company's current capacity." (Dkt. 1-3 at 425.) Plaintiff

---

[5] The CO's discussion on the "one-time occurrence" standard was also consistent with other BALCA decision in similar cases. *See, e.g.*, *in re TK ELECTRIC LLC*, BALCA Case No. 2024-TLN-00011, at 15-16 (Nov. 13, 2023) ($11.5 million subcontract not a "one-time occurrence"); *in re M&L Cleaning Servs. II, LLC*, 2023-TLN-00064, at 4 (Apr. 4, 2023) ("The second category of 'one-time occurrences' is limited to the temporary replacement of 'otherwise permanent' workers, such as when a regular employee is ill, but is expected to return to work. If the non-immigrant workers, as here, are intended to increase the size of the existing workforce – even temporarily -- there is again no 'one-time occurrence').

also disclosed in its application that "occasionally, it gets an electrical project that is over and above its normal workload just like the American Heritage Packing contract." (Dkt. 1-3 at 422.) From these admissions, it was reasonable for the CO to decide that the American Heritage Packaging contracts were not above and beyond Plaintiff's normal workload, but instead represented a standard fluctuation in the workload which could vary depending on the contract and had already required the hiring of temporary workers in the past; this would not qualify as a "one-time occurrence."[6]

Because the CO's decision was rationally connected to the evidence presented by Plaintiff, the Court does not think it is likely that Plaintiff will succeed on the merits of its claims. As such, the Court recommends that the motion for preliminary injunction be denied. Because the Court does not believe that Plaintiff is likely to succeed on the merits of its claim, the Court need not reach the other preliminary injunction factors or the parties' other arguments.

## **CONCLUSION**

---

[6]   Similarly, the Court rejects Plaintiff's argument that, "the USCIS has authoritatively interpreted [Section 214.2(h)(6)(ii)(B)(1)] to allow eligible employers to apply ***repeatedly*** for temporary workers to provide the same services." (Dkt. 3 at 6, 16-19 (emphasis added.)) The Department of Labor has expressly stated that it "would not consider it a one-time occurrence if the same employer filed serial requests for H–2B workers" for each successive project. 73 Fed. Reg. 78,020, 78,026 (Dec. 19, 2008). Plaintiff believes that a second H-2B application does not qualify as a "serial request" under the DOL's guidance. In this case, the CO cited that the nature of Plaintiff's business, history, and application distinguished this case from the hypothetical ship builder. (Dkt. 1-3 at 425-26.) The Court cannot say that is an unreasonable interpretation of the regulation because Plaintiff filed more than one H-2B request and the nature of its business model is based on obtaining contracts, some of which will presumably be larger than others and necessitate additional labor. Therefore, the Court does not believe the CO's decision should be set aside on this basis, particularly given the deferential standard on APA review. *See Madison v. United States Dept. of Labor*, 924 F.3d 941, 946 (7th Cir. 2019) (citing *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513, 129 S. Ct. 1800, 1810, 173 L.Ed.2d 738 (2009)) ("The scope of our review in this regard is narrow, and we must not substitute our judgment for that of the agency").

The Court recommends Plaintiff's Motion for Preliminary Injunction [3] be denied because Plaintiff is unlikely to succeed on the merits of its claims. Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the District Judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.

E N T E R:

Dated: March 14, 2024

_BETH W. JANTZ_
BETH W. JANTZ
United States Magistrate Judge