| | |
|---|---|
| **U.S. Department of Labor** | Board of Alien Labor Certification Appeals<br>800 K Street, NW, Suite 400-N<br>Washington, DC  20001-8002<br><br>(202) 693-7300<br>(202) 693-7365 (FAX) |

Issue Date: 09 October 2009

BALCA Case No.:    2009-TLN-00096
ETA Case No.:        C-09202-45813

*In the Matter of:*

## CAJUN CONSTRUCTORS, INC.,
          *Employer*

Certifying Officer:    William L. Carlson
                             Chicago National Processing Center

Appearances:       Robert Wingfield, Jr.
                             Amigos Labor Solutions, Inc.
                             Dallas, Texas
                             *For the Employer*

                             Gary M. Buff, Associate Solicitor
                             Jonathan Hammer, Attorney
                             Office of the Solicitor
                             Division of Employment and Training Legal Services
                             Washington, DC
                             *For the Certifying Officer*

Before:              **JOHN M. VITTONE**
                             Chief Administrative Law Judge

## DECISION AND ORDER

      This case arises from a request for review of a United States Department of Labor Certifying Officer's ("CO") denial of an application for temporary alien labor certification under the H–2B non-immigrant program. The H-2B program permits employers to hire foreign workers to perform temporary nonagricultural work within the United States on a one-time occurrence, seasonal, peakload, or intermittent basis. *See* 8

U.S.C. § 1101(a)(15)(H)(ii)(b); 8 C.F.R. § 214.2(h)(6); 20 C.F.R. Part 655, Subpart A (2009). Following the CO's denial of an application under 20 C.F.R. § 655.32, the applicant may request review by the Board of Alien Labor Certification Appeals ("the Board" or "BALCA"). § 655.33. The administrative review is limited to the appeal file prepared by the CO, legal briefs submitted by the parties, and the request for review, which may only contain legal argument and "such evidence as was actually submitted to the CO in support of the application." § 655.33(a), (e).

## STATEMENT OF THE CASE

On September 29, 2008, the Employment and Training Administration ("ETA") received a Form 750 application from Cajun Constructors, Inc. ("Cajun" or "the Employer") requesting temporary labor certification for 65 Construction Laborers from December 1, 2008 through October 1, 2009. (AF 125-126).[1] On November 24, 2008, the CO issued a Final Determination for Reduced Number Certification, granting certification for 55 workers. (AF 124). The application was corrected on November 24, 2008 to 55 workers. (AF 125-126).[2]

On July 21, 2009, ETA received a Form 9142 application from Cajun requesting temporary labor certification for 65 Construction Laborers from October 2, 2009, through August 2, 2010. (AF 79-123). The Employer checked the box on the Form 9142 indicating that the application was for new employment rather than the box indicating that it was seeking a continuation of previously approved employment with the same employer. (AF 79). However, in the Employer's statement of temporary need, it indicated that it was seeking "an extension to our current H-2B program approval." (AF 79). The Employer indicated that the nature of its temporary need was a peakload. The application contained the following statement of temporary need:

> Cajun Constructors Inc. (Cajun) is requesting an extension to our current H-2B Program approval due to our need for 65 temporary workers

---

[1] Citations to the Appeal File will be abbreviated "AF" followed by the page number.

[2] This application was actually an extension of an application that was originally filed in 2007, and approved by the United States Citizenship and Immigration Service on April 16, 2008. *See* n.7, *infra*.

>resulting from a peak load demand for our services. We need the [workers from] 10/02/2009 through 8/02/2010 which should allow us to complete our portion of this crucial project. The need for an extension is due to our contract with the U.S. Army Corps of Engineers valued at $250,000,000.00 to construct construct [sic] hurricane protection along the Harvey Canal being extended. The USACE released us on the final major construction item, which extended the completion date for hurricane protection.
>
>As you can see from the enclosed newspaper article,[3] the hurricane protection projects in the New Orleans area have been delayed by the USACE for funding reasons. This has extended the construction duration for our hurricane protection project in Harvey LA. Although we have a year round need for workers, this project is one of the utmost importance to both the USACE and the residents of New Orleans and their families. This extension is for a specific period and the temporary workers will be laid off at the time the project is completed

(AF 79).

Upon preliminary review of the application, on July 28, 2009, the CO issued a *Request for Further Information* ("RFI"), on two deficiencies with the application, only one of which is presented on appeal. (AF 73-76). That issue is whether the Employer failed to establish that its need for nonagricultural services or labor is temporary in nature because when the prior approved certification is combined with the instant application, "the employer has a back-to-back need lasting more than 10 months." (AF 75). *See* 20 C.F.R. § 655.6(c). The CO directed the Employer to submit evidence that established that the nature of its need was temporary. The CO specified that the detailed statement of temporary need contain: a description of the Employer's business history, activities, and annual schedule of operations; an explanation regarding why the nature of the job opportunity and number of workers requested reflect a temporary need; and an explanation regarding how the certification request meets one of the aforementioned regulatory standards of temporary need. (AF 75). Additionally, the CO instructed the Employer to submit supporting evidence and documentation justifying the chosen

---

[3] The Appeal File contains two newspaper articles from The Times-Picayune. The first article is dated January 14, 2009, and is entitled "State legislators furious over delays in crafting Category 5 flood protection plan." The second article is dated July 20, 2009, and is entitled "Vitter, Landrieu, Scalise introduce bills to force Corps to adopt 'Pump to the River.'" (AF 90-94).

standard of temporary need, which must include: signed work contracts; letters of intent from clients or previous monthly invoices showing work will be performed for each month during the requested period of need; annualized or multi-year work contracts or agreements, specifying the actual dates of work; and summarized and signed monthly payroll reports for a minimum of one previous calendar year, which indicate the total number of workers employed, the hours worked, and the total earnings received. (AF 75-76).[4]

The CO received the Employer's response to the RFI on August 11, 2009. (AF 10-49).[5] In a letter dated August 5, 2009, Project Manager Paul Nola stated that the Employer was founded in 1973, specializing in structural concrete, but now offers a wide range of services. Mr. Nola stated that "Our scheduled operations through the year include water treatment plant projects, hurricane protection projects in the New Orleans area, installation of deep foundations, and industrial projects." (AF 11). Mr. Nola stated that the Employer currently employs over 1400 workers, and that in order to expedite construction of hurricane protection in Jefferson Parrish, Louisiana, it needs to hire H-2B workers because it has not been able to find a sufficient number of Americans willing to do this unskilled work. Mr. Nola stated that the temporary need will last until the floodwalls are completed, and referenced attached contracts with the U.S. Army Corp of Engineers ("Corp" or "Corp of Engineers"), and construction schedules.

Mr. Nola did not provide an explanation of a peakload temporary need as designated in the Form 9142 application, but rather argued that the Employer has a one-time need for the workers due to the difficulty of finding unskilled labor in New Orleans and the Mississippi Delta after Hurricane Katrina. He stated that the recent downturn in the U.S. economy did not change this problem. He argued that the Corp of Engineers had a deadline of June 1, 2010 for finishing hurricane protection, and that a recent request by the Corp for Cajun to complete a major part of the project has pressured Cajun to locate a source of unskilled workers.

---

[4] On July 30, 2009, the CO issued a revised RFI correcting a typographical error. (AF 58-62).

[5] *See also* AF 50-56 (partial duplicate of response submitted by e-mail).

On September 15, 2009, the CO issued a Final Determination denying certification for the job opportunities. (AF 4-9). The CO first found that the documentation offered in support of a contract with the Corp of Engineers was inadequate because it was last signed on February 1, 2008, and because it did not identify the terms and conditions of the agreement. The CO then addressed the peakload need stated in the application, and reiterated that pursuant to the regulation at 20 C.F.R. § 655.6(c) he could not grant the application based on a peakload need lasting more than 10 months absent unusual circumstances, and that the Employer had demonstrated a continuous need from December 1, 2008 through August 2, 2010 – an aggregate period of over 20 months.

In regard to the one-time occurrence need argument presented by the Employer's response to the RFI, the CO stated a standard that applies two alternative tests: "(1) an employer must show that it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future; or (2) an employer must show that its situation is permanent, but a temporary event of a short duration has created the need for a temporary worker(s)." (AF 8). The CO found that the Employer failed the first test because it has employed workers to perform the services or labor in the past, and as a construction company it "cannot establish that it will never have a need for construction laborers in the future." The CO found that the Employer failed the second test because the Corp of Engineers contract is not of short duration and does not have a clear end date. The CO referenced a different application by the Employer that was denied (C-07031-21659), and the application that the Employer was now trying to extend (C-08292-4022), as evidence that the project had not ended on the dates asserted in those earlier applications (January 31, 2008 and October 1, 2009, respectively). Moreover, the CO noted that the documentation in the record stated inconsistent project end dates. Specifically, the Form 9142 showed an end date of August 2, 2010, Mr. Nola's letter of August 5, 2009 argued that the Corp of Engineers had set a deadline of furnishing hurricane protection by June 1, 2010, while a task order showed a completion date of September 1, 2010. In sum, the CO wrote: "The employer has been providing this type of services or labor for this on-going project since April, 2007 and is requesting a continuous H-2B period of twenty (20) months, from December

-5-

1, 2008 to August 2, 2010. The employer has not established its need as resulting from a temporary event of short duration." (AF 8).

The Employer requested administrative review by BALCA on September 21, 2009. (AF 1-3).

The Employer's representative filed a statement of position on September 28, 2009. In an attached letter, Mr. Nola argued that in the past in projects in other states it had been awarded temporary labor certification based on the one-time occurrence standard for a temporary need, but that for the Harvey Canal project, had been told by a CO that it would have to use a "peakload" standard. The Employer did not think that made sense, and only reluctantly filed the petition for the Harvey Canal project as a peakload need. Mr. Nola argued that its first petition for workers on this project ended in a non-determination (meaning no determination either in favor or against certification) by the CO, based on the situation resulting from Hurricanes Rita and Katrina, and a statement that the non-determination could be presented to the United States Citizenship and Immigration Service (USCIS) for final adjudication.[6] USCIS approved the application with dates of need of February 1, 2008 through November 30, 2008.[7] Mr. Nola stated that the CO then approved an extension of this petition for December 2008 through October 2009, and that a peakload need had not been questioned. Mr. Nola stated that the Employer is not sure why its current request for an extension has now been found out of compliance. Mr. Nola argued the Employer's circumstances are complex and unique, and linked to the unusual circumstances resulting from Hurricanes Katrina

---

[6] Under the regulations in effect at that time, the CO's decision denying an H-2B temporary labor certification application could be appealed to USCIS by an employer through the presentation of "countervailing evidence. *See* ETA, Final Rule, Labor Certification Process and Enforcement (H-2B Workers), 73 Fed. Reg. 78020, 78045 (Dec. 19, 2008).

[7] The Employer attached to its statement of position copies of the January 18, 2008 "non-determination" by the CO (who was a different CO from the one who processed the instant application), a January 29, 2008 letter to the USCIS Vermont Service Center asking for a "one-time extension" of its 2007 H-2B petition for workers its on hurricane protective barriers project; and the Vermont Service Center's April 16, 2008, certification of the application for an extension. These documents were not in the Appeal File. However, the CO's denial letter referenced the 2007 application. (AF 8). Thus, it appears that they were part of the record before the CO when the denial decision was made, and therefore I will consider them in rendering my decision in this matter. *See* 20 C.F.R. §§ 655.33(a)(5) and 656.33(e) (limiting scope of BALCA review).

and Rita. He argued that if the regulations had been applied consistently for each of its submissions, a denial would not have been issued.

The Office of the Solicitor filed a statement of position on behalf of the CO on October 6, 2009, arguing:

> The CO correctly denied Cajun's application based upon its failure to show a temporary need. Attachment A, Change 1 to TEGL 21-06 entitled "Procedures for H-2B Certification of Temporary Non-Agricultural Occupations," issued prior to the 2008 regulations, states:
>
>> A job opportunity is considered temporary under the H-2B classification if the employer's need for the duties to be performed is temporary whether or not the underlying job is permanent or temporary. It is the nature of the employer's need, not the nature of the duties, that is controlling. (*Matter of Artee Corp.,* 18 I&N 366 (Comm. 1982)).
>
> The preamble to the 2008 regulations re-affirms this policy, citing *Artee* and stating: "The controlling factor continues to be the employer's temporary need and not the nature of the job duties." 73 F.R. 78025. Here, as detailed below, it is clear that the employer's need for the duties to be performed is not temporary because the employer is constantly seeking construction workers for its many projects. See AF at 11.
>
> First, the CO correctly found that there is no temporary peak load need. Indeed, Cajun acknowledges this in their response to the RFI in which they state that their application should be considered under the one-time occurrence standard, not the peak load standard. Id. at 12. Cajun took this position because they do not qualify under the peak load need standard. The employer was previously certified for 65 workers from December 1, 2008 through October 1, 2009. Id. at 8. The current application seeks workers from October 1, 2009 though August 2, 2010. Id. As stated above, a need lasting longer than ten months is not ordinarily considered temporary. Id. at 61; 20 C.F.R. § 655.6(c). "The dates of need requested by the employer in this application, together with its prior application reveal that the employer has a year-round permanent need for the services or labor to be performed," so this application does not meet the peak load standard. Id. at 7-8.
>
> Second, the CO, in accordance with Cajun's request, analyzed this case to determine whether the employment is temporary under the one-time occurrence standard. Id. at 8-9. The CO correctly found that they did not qualify under that standard. Language from *Artee* quoted by the Board at page 15 of Caballero. Caballero Contracting & Consulting LLC, 2009-

TLN-00015, (April 9, 2009), is critical here. In keeping with the principles of the H-2B program, granting an H-2B certification to a temporary help service, or in this case a contractor, must be the exception not the rule. It is the employer's burden to overcome the assumption that employers, such as this one, are offering permanent employment. "It is the petitioning employer's burden to establish eligibility for labor certification and it is not the CO's responsibility to provide a detailed guide to the employer on how to achieve labor certification." Caballero at 20.

The CO describes two tests used in determining whether or not an application meets the one-time occurrence standard:

> (1) an employer must show that it has not employed workers to perform the Services or labor in the past and that it will not need workers to perform the services or labor in the future; or (2) an employer must show that its situation is permanent, but a temporary event of a short duration has created the need for a temporary worker(s).

AF at 8; 8 C.F.R. § 214.2(h)(6)(ii)(B).

The employer did not meet the first test because it had been certified for the same positions under the peak load standard in the past. AF at 8. In addition, the CO states that Cajun regularly employed workers to perform these services and the survival of a contracting "construction company depends on the acquisition of and renewal of multi-year contracts." Id. In short, Cajun always has a need for construction workers because it is continually seeking out and performing construction work and, as Cajun states, the construction workers are let go at the end of each contract. Id. at 15. Cajun does not suggest anything unique about the assignments for which these workers are being sought. While these workers are being recruited for a specific contract, Id. at 12-13, there is no basis for concluding that when the project is complete, other similar projects will not present their selves. The very nature of an employment contractor's business model means that in order for the company to survive, other assignments must follow this assignment. Without evidence to the contrary, the CO is correct to assume that this is not a one-time occurrence, but will happen again and again because Cajun will continuously have other contracts demanding workers with similar skills. See Caballero at 20.

For the same reasons, Cajun does not meet the second test. Though Cajun states that their need was created by this specific project, this is not the case. There is no evidence that this project is substantially different than other projects Cajun undertakes. By Cajun's own admission, they frequently take on very large projects and have a large workforce. AF at

> 11. Cajun does not put forth significant evidence demonstrating that this is a. temporary event of a short duration. In, fact, big projects seem to be frequently occurring events for Cajun and the duration of this project is not short, but likely will last at least 3 years total. For these reasons, Cajun does not meet the second test.
>
> The failure to show a temporary need is a valid reason for denial and based upon the record, the CO's determination should be affirmed.

(CO's Brief at 1-3).

## DISCUSSION

To obtain certification under the H-2B program, an applicant must establish that its need for workers qualifies as temporary under one of the four temporary need standards: one-time occurrence, seasonal, peakload, or intermittent. 20 C.F.R. § 655.6(b). Absent unusual circumstances, the Secretary will deny an application where the employer has a recurring, seasonal or peakload need lasting more than 10 months. 20 C.F.R. § 655.6(c). The burden of proof to establish eligibility for a temporary alien labor certification is squarely on the petitioning employer. 8 U.S.C. § 1361.

Initially I find that although it is not clear on the face of the Form 9142 application that is the subject of this appeal, the Appeal File as a whole establishes that the Employer is seeking to extend H-2B workers a second time for a hurricane protection project relating to the Harvey Canal in Louisiana. This is not an application for new employment. It is a request to extend the period of employment of previously approved H-2B workers.

The Employer's argument on appeal is partly based on the contention that it was specifically instructed by a CO, against its better judgment, to file the original 2007 application and its 2008 extension request stating a peakload need, when its need is actually a one-time occurrence. Implicit in this argument is the notion that the Employer was manipulated in having to defend a peakload need. I find such an argument not to be material to the resolution of this appeal because the CO analyzed the Employer's needs on both a peakload and a one-time occurrence standard.

Moroever, in reviewing the Employer's response to the RFI and its argument on appeal, I find that the Employer has clearly abandoned a peakload need justification for its temporary need, and instead is relying solely on analysis of its temporary need under the one-time occurrence standard.[8]

The Labor Department's H-2B regulations refer to the Department of Homeland Security regulation at 8 C.F.R. § 214.2(h)(6)(ii)(B) for the definition of a one-time occurrence temporary need. 20 C.F.R. § 655.6(b). That regulation provides:

> (ii) *Temporary services or labor*--(A) Definition. Temporary services or labor under the H-2B classification refers to any job in which the petitioner's need for the duties to be performed by the employee(s) is temporary, whether or not the underlying job can be described as permanent or temporary.
>
> (B) *Nature of petitioner's need*. As a general rule, the period of the petitioner's need must be a year or less, although there may be extraordinary circumstances where the temporary services or labor might last longer than one year. The petitioner's need for the services or labor shall be a one-time occurrence, a seasonal need, a peakload need, or an intermittent need:
>
> (1) *One-time occurence*. [sic] The petitioner must establish that it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future, or that it has an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker.

8 C.F.R. § 214.2(h)(6)(ii)(B) (2009).

As the CO found, the Employer has previously employed construction laborers in the past, and has not established that it will not employ construction laborers in the future. Thus, it does not meet the first of the two alternative standards for a one-time occurrence temporary need. The Employer might meet the second standard if the application was being filed under the circumstance of a "temporary event of short

---

[8] Even if the Employer has not abandoned the peakload rationale for its temporary need, I would affirm the CO's finding under 20 C.F.R. § 656.6(c) that there were no unusual circumstances established by the Employer to justify the granting of an extension to the existing certification to create a period of employment lasting more than 10 months.

duration" that created the need for a temporary worker. As the CO noted, however, the Employer is a construction services company. It is in the nature of its business to work on a project to completion and then move to another. Thus, the Harvey Canal project is not a "temporary event" when viewed the in context of the Employer's business – it is just one of a series of projects.[9] Moreover, although the record suggests that the Corp of Engineers is under pressure to complete hurricane protective projects in the New Orleans and Gulf Coast area, the CO showed in the Final Determination that the project has not been of short duration and does not have a clear end date. Thus, I find that the CO correctly found that the Employer has not established that its temporary need fits the one-time occurrence standard found in the USCIS regulations.

Finally, I note that the Employer's argument in this matter links its temporary need to Hurricanes Katrina and Rita, implying that the fact that the Harvey Canal project resulted from the need for remedial hurricane protection work is somehow determinative. But the fact that a hurricane created the need for the work does not change the fact that Cajun Constructors is a construction services company whose viability depends on needs for its services continually arising. It is not clear why the fact that an extreme natural disaster created the need for the work has any bearing on Cajun's apparent continual need for construction laborers. The Harvey Canal hurricane protection contract may be a

---

[9] In the Final Rule promulgating the current H-2B regulations, ETA gave the example of a shipbuilder that might be eligible for temporary labor certification for a contract to build a ship that created a burden outside its normal workload, but that would not be eligible if it continually requests H-2B workers for each shipbuilding project:

> Neither the Department nor DHS is changing the long-established definition of one-time occurrence which encompasses both unique non-recurring situations but also any "temporary event of a short duration [that] has created the need for a temporary worker." For example, an employer could utilize the H-2B program to secure a worker to replace a permanent employee who was injured. Further, if that permanent employee, upon returning to work, subsequently suffered another injury, the same employer could utilize the H-2B program again to replace the injured employee on the basis of a one-time occurrence. A one-time occurrence might also arise when a specific project creates a need for additional workers over and above an employer's normal workforce. For example, if a shipbuilder got a contract to build a ship that was over and above its normal workload, that might be a one-time occurrence. However, the Department would not consider it a one-time occurrence if the same employer filed serial requests for H-2B workers for each ship it built.

ETA, Final Rule, Labor Certification Process and Enforcement (H-2B Workers), 73 Fed. Reg. 78020, 78027 (Dec. 19, 2008).

discrete project, but it appears to be only one of many projects that Cajun Constructors has worked on over many years as a construction services company. The record strongly suggests that Cajun's need for construction laborers will continue, and I find therefore that its need for such workers therefore is not temporary. *See* 8 C.F.R. § 214.2(h)(6)(ii).

## **ORDER**

Based on the foregoing, **IT IS ORDERED** that the CO's denial of certification is **AFFIRMED**.

                                    For the Board:

## A

**JOHN M. VITTONE**
Chief Administrative Law Judge