# UNITED STATES DEPARTMENT OF LABOR
## BOARD OF ALIEN LABOR CERTIFICATION APPEALS
### Washington, DC

_____

Issue Date: 12 March 2024

| | |
|---|---|
| BALCA Case Nos.: | 2024-TLN-00099 |
| | 2024-TLN-00100 |
| | 2024-TLN-00101 |
| | |
| ETA Nos.: | H-400-23252-333710 |
| | H-400-23252-333708 |
| | H-400-23252-333712 |

*In the Matter of:*

**INTER-MARINE US CORP.,**
        *Employer.*

*Appearances:*

    Wendel Hall, Esq.
        *For the Employer*

    Jaclyn Dennis, Esq.
        *For the Certifying Officer*

### DECISION AND ORDER AFFIRMING DETERMINATION OF CERTIFYING OFFICER

The above-captioned consolidated case is before the Board of Alien Labor Certification Appeals ("BALCA" or "Board") pursuant to a request for review by Inter-Marine US Corp. ("Employer") of the Certifying Officer's *Final Determination* denying Employer's H-2B labor certification requests.[1] The H-2B program permits employers to hire foreign workers to perform temporary, nonagricultural work within the United States on a one-time, seasonal, peak load, or intermittent basis.[2] Employers who seek to hire foreign workers under this program must apply for and receive labor certification from the U.S. Department of Labor ("Department" or "DOL").[3] A Certifying Officer ("CO") in the Office of Foreign Labor Certification of the Department's Employment and Training Administration reviews applications for temporary labor certification. If the CO denies certification or an extension thereof, an employer may seek administrative review before BALCA.[4]

---

[1] On April 29, 2015, the Department of Labor and the Department of Homeland Security jointly published an Interim Final Rule ("IFR") amending the standards and procedures that govern the H-2B temporary labor certification program. 80 Fed. Reg. 24042 (April 29, 2015). In this Decision and Order, all citations to 20 C.F.R. Part 655 pertain to the IFR.
[2] *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b); 8 C.F.R. § 214.2(h)(6); 20 C.F.R. § 655.6(b).
[3] 8 C.F.R. § 214.2(h)(6)(iii).
[4] 20 C.F.R. § 655.61(a).

**Procedural History and Facts**

1. <u>Initial Application.</u> On September 9, 2023, Employer filed its H-2B *Application for Temporary Employment Certification* (ETA Case No. H-400-23252-333712), therein requesting fifty (50) Pipe Fitters for a temporary one-time occurrence need from December 1, 2023 to July 15, 2026.[5] In its attached Statement of Temporary Need, Employer stated it has a one-time need for workers during the requested dates because its company, a United States subsidiary of a foreign shipbuilding company, has never built a vessel in the United States nor anticipates doing so again.[6] Rather, Employer indicated it had been consulted by a shipbuilder client ("Avantis") of its parent company for expertise in building a specific type of vessel and thus was in need of temporary workers to perform the associated work.[7] Employer submitted several pieces of documentation in support of its *Application*, including but not limited to its labor contract, Articles of Incorporation, and employment projections.[8]

2. <u>CO's Denial of Initial Application.</u> Following the CO's issuance of an initial *Notice of Deficiency* and Employer's response thereto, on November 17, 2023 the CO issued a *Final Determination* denying Employer's *Application for Temporary Employer Certification* (ETA Case No. H-400-23252-333712) because Employer's explanation and documentation of its temporary need had not overcome the assessed deficiency of failure to establish the job as temporary in nature.[9]

3. <u>Employer's First Request for Administrative Review.</u> On December 4, 2023 Employer requested administrative review with BALCA of the foregoing *Final Determination* (ETA Case No. H-400-23252-333712), together with the CO's *Final Determination* in ETA Case Nos. H-400-23251-33710 and H-400-23252-333708.[10] The two latter Determinations had denied Employer's *Applications for Temporary Employment Certification* for fifty (50) Platers and fifty (50) Welders on the same project and during the same dates of need,[11] due to Employer's failure to establish the job opportunities as temporary in nature.[12] The three cases were consolidated by the assigned Administrative Law Judge ("ALJ"), as they presented common issues of law and fact.[13]

4. <u>Administrative Law Judge Remand.</u> On December 21, 2023, the ALJ vacated the CO's *Final Determination* and remanded the foregoing consolidated matter for the CO to give Employer an opportunity to respond to all identified deficiencies and for the CO to articulate the factual and legal bases underlying the conclusions in any final determination.[14] The ALJ did not conclude that Employer established a temporary need for labor.[15]

5. <u>CO's Second Notice of Deficiency.</u> Following the remand of the foregoing matter, on January 8, 2024 the CO issued a second *Notice of Deficiency* in response to the ALJ's directive, therein describing the reasons that Employer's *Application for Temporary Employment Certification* failed to meet the

---

[5] Administrative Appeal File ("AF"), pp. 1084-1117.
[6] AF, p. 1090.
[7] *Id.*
[8] AF, pp. 1067-1104.
[9] AF, pp. 606-615, 1059-1083.
[10] AF, pp. 1020-1058.
[11] With respect to ETA Case No. H-400-23252-222708, Employer's Application inadvertently requested dates of need from December 8, 2023 to September 3, 2026. AF, pp. 10-11, 533.
[12] *Id.*
[13] AF, p. 1013.
[14] AF, pp. 1002-1008.
[15] *Id.*

criteria for acceptance.[16] The CO first explained that Employer had failed to establish the job opportunity as temporary:

> Based on the information provided in the original filing and in the employer's response, the employer (Inter-Marine US Corp) was created solely to enter into a contract with Avantis, which is a long-term client of the parent company Intermarine, for the purpose of completing the job at issue, which is building a ship in Brownsville, Texas for a company called Keppel AmFELS Inc.
>
> The employer failed to establish that the need for these workers is its own need, and that its need is temporary. The employer states it entered into a contract to perform services for Avantis. It appears that Avantis customarily secures contracts for similar services. The employer has indicated that the sole reason for its existence is to build a ship, and the basis for its one-time occurrence is its contract with Avantis. It is unclear whether the employer will continue to exist upon completion of the Avantis contract, although the employer suggests it will cease operations once the Avantis contract is complete since it was created for the "sole purpose" of entering the Avantis contract. Since the duration of the employer's existence appears to be tied to the Avantis contract, it is unclear how the employer's need is temporary. Instead, it appears its need is permanent as it is a need that lasts for the entirety of its existence. To establish a one-time need, the employer may have "an employment situation that is otherwise permanent, but a temporary event of short duration" must then have "created the need for a temporary worker." 8 CFR 214.2(h)(6)(ii)(B)(1). The employer has not articulated what temporary event of short duration has created this need for temporary workers. Instead, it appears that that the "event" lasts for the entirety of the employer's existence and is permanent.
>
> Furthermore, it is also unclear how the alleged one-time need for the specific ship-building project is actually the need of the employer itself, rather than the need of Avantis, as allegedly it is Avantis who is building a ship for Keppel AmFELS, Inc. It is possible that Avantis has a one-time occurrence need but this does not mean the employer also has a one-time occurrence need.[17]
>
> Finally, the employer may also establish a one-time need if it can establish that "it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future." 8 CFR 214.2(h)(6)(ii)(B)(1). The regulation requires that the employer demonstrate that it will not need workers to perform the services or labor in the future. The employer explains that the shipbuilding project has a definable end point, but this does not establish that it will not need workers to perform the services or labor in the future but rather that Avantis, as the shipbuilder, may not have a future need. Furthermore, the implication that the employer will cease operations does not establish that the employer will not need workers to perform the same services or labor in its future because the Employer is actually stating that it will need workers to perform the services or labor for the entirety of its existence, or its entire future.[18]

Due to the foregoing deficiency, the CO directed Employer to provide various documentation, including:

---

[16] AF, pp. 529-535, 537-543, 545-551, 992-998.
[17] With respect to ETA Case No. H-400-23252-222708, the CO's *Notice of Deficiency* also indicated Employer had provided an inconsistency between its requested dates of need (December 8, 2023 to September 3, 2026) and its submitted document indicating the project would conclude in July 2026. AF, p. 533.
[18] AF, pp. 532-533, 548-549, 995.

> \* A description of the employer's business history and activities (i.e. primary products or services) and schedule of operations through the year;
> \*An explanation regarding why the nature of the employer's job opportunity and number of foreign workers being requested for certification reflect a temporary need; and
> \* An explanation regarding how the request for temporary labor certification meets one of the regulatory standards of a one-time occurrence, seasonal, peak load, or intermittent need.
> \* Signed service contracts from customers for the previous two calendar years;
> \* An explanation of the data in submitted payroll documentation;
> \* Other evidence and documentation that similarly serves to justify the dates of need being requested for certification, or if the employer is a new business without an established business history and activities, any other evidence and documentation relating to the employer's current business activities and the trade industry that similarly serves to justify the dates of need being requested for certification.[19]

The CO accordingly indicated that if the submitted documents and its relationship to the employer's need is not clear to a lay person, the employer must submit an explanation of exactly how the documents support its requested dates of need.[20]

The CO's *Notice of Deficiency* also identified a deficiency concerning confirmation of joint employment status, finding as follows in pertinent part:

> Information in the employer's filing raises a question of whether the employer is a joint employer with another entity or entities.
>
> The employer did not explain how the one-time need requested is that of the employer, and not the need of Avantis, which is a client of the employer's parent company, Intermarine. The employer was clear that it was created for the "sole purpose" of fulfilling a contract for Avantis who in turn was to supply workers to Keppel AmFELS Inc. It is unclear from the employer's explanation of its temporary need and justification for its requested workers, who controls the workers' day to day activities and what the relationship is between the employer, Avantis, Intermarine, and Keppel AmFELS Inc. As the ALJ noted, "The number of relevant actors . . . creates confusion regarding who will ultimately control the workers' day to day activities." Slip op. at 5, FN 8. Employer's responses "suggest that Intermarine and/or Avantis could be considered 'joint employers' under 20 C.F.R. § 655.5." Id.
>
> As defined in the Department's regulations at 20 CFR 655.5, joint employment is, "where two or more employers each have sufficient definitional indicia of being an employer to be considered the employer of a worker, those employers will be considered to jointly employ that worker. Each employer in a joint employment relationship to a worker is considered a joint employer of that worker."
>
> An employer, as defined in the Department's regulations at 20 CFR 655.5, is an entity that meets the following criteria:
>
> a. Has a place of business (physical location) in the U.S. and a means by which it may be contacted;

---

[19] AF, pp. 533, 549, 997.
[20] AF, pp. 534, 549, 997.

>b. Has an employer relationship (such as the ability to hire, pay, fire, supervise or otherwise control the work of employees) with respect to an H–2B worker or a worker in corresponding employment; and
>c. Possesses, for purposes of filing an application, a valid Federal Employer Identification Number (FEIN).
>
>The Department requires further information to assess whether the applicant is a joint employer.[21]

Accordingly, the CO's *Notice of Deficiency* indicated that Employer must respond to the following questions to clarify whether it is a joint employer:

>1. Does the applicant intend to have an employer relationship such as the ability to hire, pay, fire, supervise or otherwise control the work of employees with respect to H-2B employees or related U.S. workers hired pursuant to this *Application for Temporary Employment Certification*? (Yes/No)
>>a. If yes, to what extent does the applicant company have the ability to hire, pay, fire, supervise or otherwise control the work of employees with respect to an H–2B worker or a worker in corresponding employment?
>
>2. Is there another company or entity that will have an employer relationship with respect to H-2B employees or related U.S. workers hired pursuant to this Application for Temporary Employment Certification? (Yes/No)
>>a. If yes, to what extent does the other company or entity have the ability to hire, pay, fire, supervise or otherwise control the work of employees with respect to H–2B worker(s) or worker(s) in corresponding employment?
>
>3. Will any entity or person employed by any entity other than the applicant have any authority or responsibility:
>>a. to control or supervise the manner and means by which the work will be performed? (Yes/No)
>>b. for determining the skills and/or training required to perform the activities in the job opportunity? (Yes/No)
>>c. to control the source of the instrumentalities and tools required for accomplishing the work? (Yes/No)
>>d. to control the location of the work to be performed? (Yes/No)
>>e. over when and how long to perform the work? (Yes/No)
>>f. over work that is being performed a part of the regular business of the applicant employer? (Yes/No).
>
>>If yes to any of the questions above, provide further detail and explain: 1) the terms, conditions, and extent of such authority, power or control, including whether such authority, power or control is contractual; and 2) whether any other entity has also filed a separate Application for Temporary Employment Certification for the same job opportunity and time period as the instant Application for Temporary Employment Certification. If so, please provide the case number of the client employer's Application for Temporary Employment Certification.[22]

---

[21] AF, pp. 534, 550, 997-998.
[22] AF, pp. 534-545, 550-551, 997-998.

6. *Employer's Response to the CO's Second Notice of Deficiency.* Employer offered a response to the CO's *Notice of Deficiency* on January 23, 2024.[23] Therein, Employer indicated that while it was organized in April 2023 and has no historic customer contracts or payroll documentation to provide, it has its own need for the requested workers since Avantis provides its engineering design but does not employ any laborers.[24] Employer further asserted that tying temporary need to the lifespan of a company's operations is arbitrary, and that temporary need is demonstrated because Employer has never employed workers to perform labor or services in the past and will not need workers to perform in the future given the project's defined end date.[25] Employer also answered the CO's questions concerning confirmation of joint employment status, offering negative responses to all but the first question, to which it responded that "[t]he applicant company has full and exclusive ability to hire, pay, fire, supervise or otherwise control the work of employees with respect to an H-2B worker or a worker in corresponding employment."[26] Finally, Employer noted that the CO's reference to an inconsistency in the dates of need for ETA Case No. H-400-23252-333708 was a typographical error corrected in Employer's previous Request for Review.[27]

7. *CO's Second Final Determination.* On February 1, 2024, the CO issued a *Final Determination* denying Employer's *Application for Temporary Employment Certification* in ETA Case Nos. H-400-23252-333708, H-400-23252-333710, and H-400-23252-333712.[28] In the *Final Determination,* the CO found that Employer had failed to establish that the need for these workers is its own and that the need is temporary, stating in pertinent part:

> The definition of a one-time occurrence need indicates "an employment situation that is otherwise permanent, but a temporary event of short duration" must have "created the need for a temporary worker." 8 CFR 214.2(g)(6)(ii)(B)(1). If the company's sole purpose is to complete the project for Avantis Marine, Ltd., then the sole reason for the existence of the company is based on the life of the project. If the company were to cease all operations after the contract, then the company's need would be considered permanent throughout the entirety of its existence. In the NOD response, the employer cited a case, *Venice Enterprises*, No. 2023-TLN-00119 (Sep. 27, 2023), to suggest that Inter-Marine has a qualifying need. However, *Venice Enterprises, Inc*. was established in 2010 and awarded a project in 2023, having a history of 13 years of business prior to their awarded project. Inter-Marine was established only for the project with Avantis Marine, Ltd., without any prior business. If the employer had previous work experience, then the one-time occurrence could be considered as a temporary need because the employer would show they haven't done the type of work before with the employer but have with others. However, due to the employer indicating the company is only needed to establish a means to fulfill a contract and nothing more, then the conditions of need for workers is considered permanent from start to finish of the contract, and from the inception to closure of the company.
>
> It also remains unclear how this one-time need is actually the need of the employer, rather than the need of its client, Avantis Marine, Ltd. The employer has indicated that the sole reason for its entrance into providing workers [] for the vessel building business,

---

[23] AF, pp. 523-527, 553-554.
[24] AF, pp. 523, 526.
[25] AF, p. 523.
[26] AF, p. 525.
[27] AF, p. 527.
[28] AF, pp. 12-39, 513-522.

and the basis for its one-time occurrence, is its contract with Avantis Marine Ltd. It appears that the employer's business practice is contingent on soliciting, securing and fulfilling contracts. Securing a single one-time contract does not create a temporary need and there is no guarantee that the employer will not have opportunities for like projects in the future.

In order to establish a one-time occurrence, the employer must show that it has not employed workers to perform the service or labor in the past and will not need workers to perform the services or labor in the future or the employer must have an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker. The employer stated, "the company was not organized until April 2023" and "the company will not need workers to perform this work in the future" because "the company will not need to build this vessel again once it has been completed." But this statement implicates Avantis's need to hire workers in the future as the builder rather than the employer's future need. Alternatively, the employer also has not established what temporary event of short duration creates a one-time occurrence temporary need when the ship building project will last for the lifespan of the employer. The employer did not submit adequate documentation and did not establish that the employer has a One Time Occurrence need during the requested period of need. Therefore, the employer did not overcome the deficiency.[29]

8. <u>Employer's Second Request for Review.</u> On February 12, 2024, Employer requested administrative review and reversal of the CO's *Final Determination*.[30] Employer's Request, which is detailed further below, argues that that the CO used the wrong definition of temporary need, erroneously determined that Employer would need workers for the entire period of its existence and might have a future need, and erroneously denied based on a typographical error regarding dates of need.[31]

9. <u>OALJ Case Proceedings</u>. This matter was assigned to the undersigned on February 14, 2024, and the administrative file was received on February 20, 2024. A *Notice of Case Assignment and Consolidation and Order Establishing Brief Filing Deadline* was issued the next day, consolidating the three above-captioned BALCA case numbers and granting the CO the opportunity to file a brief no later than seven (7) business days after receipt of the Appeal File, or, in the alternative, to notify the Board of its intent to rest on previously filed documentation in lieu of filing a brief. The CO filed its *Certifying Officer's Brief* ("CO's Brief") on February 29, 2024.

Employer filed a *Motion for Leave to File Merits Brief* and attached brief on February 27, 2024, which it attempted to withdraw on February 29, 2024. As its initial withdrawal was rejected due to improper filing form, on March 7, 2024 Employer filed a *Motion/Amended Notice of Withdrawal with Respect to February 29, 2024 Notice of Withdrawal of Motion*. At its request, Employer's *Motion for Leave to File Merits Brief* is **WITHDRAWN** and the attached brief will not be afforded consideration or further discussion herein.

## Parties' Positions

In its consolidated Request for Review filed on January 25, 2024, Employer asserts that the CO's *Final Determination* applied the wrong definition of temporary need in constructing a definition of "permanent

---

[29] AF, pp. 19, 28-29, 38-39, 513-522.
[30] AF, pp. 2-9.
[31] AF, pp. 2-9.

need" that corresponds to the entirety of Employer's existence.[32] Employer contends that BALCA's decision in *Venice Enterprises*, No. 2023-TLN-00119 (September 27, 2023), bears directly on this case and that the CO improperly distinguished that case based on that employer's establishment more than a decade prior to the date of need, as that assertion is unverified and nonetheless irrelevant because the relevant inquiry is whether the need (defined by contract) will come to an end.[33] Employer also argues that the CO's finding that Employer's need for workers will last for the entire period of existence is incorrect, as certain workers (Platers) will finish their work long before the completion of the vessel.[34] Furthermore, Employer contends that the CO's finding that Employer may have opportunities for like projects in the future is erroneous because while Employer "may wind up when the ship is built," the material inquiry is the need for workers to fulfill Employer's contractual obligation regarding this ship, which is time limited and therefore constitutes temporary need.[35] Finally, Employer indicates that the CO's reliance on a typographical error regarding dates of need in one of the three cases within the consolidated group[36] is arbitrary and capricious because Employer corrected this error in its response to the CO's first denial and again in response to the second issued *Notice of Deficiency*.

In contrast, the CO's Brief requests that BALCA affirm the CO's *Final Determination* because Employer failed to establish that its need for labor/services is temporary, arguing that an employer "formed for a temporary, discrete purpose, whose need for workers lasts for the duration of the employer's existence, does not have a temporary need for workers, but a permanent need."[37] While the CO argues that no further analysis is necessary because temporary need is not established on this basis alone, it nevertheless further addresses the prongs of the "one-time" occurrence regulations.[38] Regarding the first of these prongs, the CO argues that because Employer's entire business is temporary, its temporary business cannot satisfy the requirement to have an employment situation which is otherwise permanent for its non-H-2B workforce.[39] The CO also argues that Employer has failed to establish a temporary event of short duration creating a temporary need for workers, as the underlying employer could use serial subcontractors claiming a one-time need to have a continuous supply of H-2B workers that would clearly circumvent the purpose and requirements of the H-2B program.[40]

The CO distinguishes Employer's cited BALCA decision in *Venice Enterprises* as a dissimilar case in which that employer provided sufficient evidence to establish that it (not the underlying contracting business) had its own temporary business need and that the employer was not established by the underlying contracting business to circumvent the H-2B regulations.[41] Instead, the CO argues that the facts in this case more closely resemble the Board's decision in *CM Labor Solutions*, in which the Board held it is impermissible and contrary to the H-2B program for an employer to rely on the temporary need of an underlying contracting business.[42] The CO indicates that this Employer is not seeking workers for a temporary increased need "over and above its normal workload" but for its baseline workforce, as distinguishable from the shipbuilder example in the 2008 H-2B final rule.[43] The CO also argues

---

[32] AF, p. 8.
[33] AF, p. 9.
[34] AF, p. 9.
[35] AF, p. 9.
[36] ETA Case No. H-400-23252-333708.
[37] CO's Brief, p. 9, citing *Chip Fab Constr. Servs.*, *LLC*, 2023-TLN-00053 (April 10, 2023); *Richmond Cnty. Constructors*, 2018-TLN-00164 (October 5, 2018).
[38] CO's Brief, p. 10.
[39] CO's Brief, p. 10, citing *Richmond Cnty. Constructors*, 2018-TLN-00164 (October 5, 2018).
[40] CO's Brief, pp. 10-11, citing *CM Labor Solutions, LLC,* 2023-TLN-00077 (May 26, 2023).
[41] CO's Brief, pp. 10-11, citing *Venice Enterprises*, No. 2023-TLN-00119 (September 27, 2023).
[42] CO's Brief, p. 11, citing *CM Labor Solutions, LLC,* 2023-TLN-00077 (May 26, 2023).
[43] CO's Brief, p. 13, citing 73 Fed. Reg. 78020, 78026 (December 19, 2008); *Richmond Cnty. Constructors*, 2018-TLN-00164 (October 5, 2018).

Employer has failed to establish that it will not need workers to perform the services or labor in the future, arguing that while Avantis may not have a future need because the ship may be finished, Employer has nonetheless not established that it will not need temporary workers to perform the kind of work advertised in the present application in other service contracts.[44] Furthermore, the CO points out that while this case was previously remanded to allow Employer to respond to the CO's rationale that Employer had not established its own temporary need, Employer did not provide any new facts or documentary evidence beyond a two-sentence assertion that Avantis provides engineering design and does not employ laborers to perform the physical building of the ship, which merely clarifies that Employer is indeed providing the labor for Avantis' end client, Keppel Am FELS, Inc. and warrants affirmation due to the lack of requested documentation.[45] Finally, with respect to the typographical error concerning the dates of need in ETA No. H-400-23252-333708, the CO recognizes that Employer granted permission to correct the end date of the period of need from September 3, 2026 to July 15, 2026, consistent with the end date of the project.[46]

## Applicable Law

### H-2B Program

The applicable section of the H-2B nonimmigrant visa program enables United States nonagricultural employers to employ foreign workers on a temporary basis. Employers may seek approval for temporary laborers to perform nonagricultural labor or services if qualified U.S. workers capable of performing such service or labor cannot be found in this country, and may request administrative review before BALCA of a CO's determination.[47]

### Burden of Proof

The burden of proof to establish eligibility for a temporary alien labor certification is squarely on the petitioning employer.[48] Bare assertions without supporting evidence are insufficient to carry the employer's burden of proof.[49]

### Standard of Review

BALCA's standard of review in H-2B cases is limited, and may only consider the Appeal File prepared by the CO, the legal briefs submitted by the parties, and an employer's request for administrative review, which may only contain legal arguments and evidence that the employer submitted to the CO before the date of the CO's final determination.[50] A CO's denial of certification or extension thereof must be upheld unless shown by an employer to be arbitrary, capricious, or otherwise not in accordance with

---

[44] CO's Brief, pp. 14-15, citing *RQ Construction, LLC*, 2024-TLN-00028 (November 21, 2023).
[45] CO's Brief, pp. 15-16, citing *AG&P Americas, Inc*., 2021-TLN-00080 (October 15, 2021); *Rapid Pallet Incorporated*, 2021-TLN-00051 (May 18, 2021); *Carolina Contracting & Management LLC*, 2017-TLN-00026 (April 4, 2017); *Empire Roofing of Oklahoma*, 2016-TLN-00065 (September 15, 2016).
[46] CO's Brief, p. 1, citing AF, p. 522. Considering the CO's recognition thereof and the lack of further corresponding argument, this previously identified deficiency is considered to be cured and is not further addressed herein.
[47] 8 C.F.R. § 214.2(h)(6)(i)(A); 20 C.F.R. § 655, Subpart A.
[48] 8 U.S.C. § 1362.
[49] *AB Controls & Tech, Inc*., 2013-TLN-00022 (January 17, 2013).
[50] 20 C.F.R. § 655.61.

law.[51] After considering the evidence of record, BALCA must: (1) affirm the CO's determination; (2) reverse or modify the CO's determination; or (3) remand the case to the CO for further action.[52]

*Temporary Need*

An employer seeking certification under this subpart must establish that its need for non-agricultural services or labor is temporary, regardless of whether the underlying job is permanent or temporary.[53] Employment is of a temporary nature when the employer needs a worker for a limited period of time.[54] An employer must establish that its need for temporary services or labor "will end in the near, definable future."[55]

A temporary need is classified as either seasonal, peak load, intermittent, or a one-time occurrence.[56] To establish temporary need as a "one-time occurrence," an employer must show that it "has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future, or that it has an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker."[57]

## Analysis

Employer has asserted a temporary need based on a "one-time" occurrence. Per the applicable regulation, there are only two ways to qualify for temporary labor certification based on a "one-time" occurrence. First, an employer can show that it "has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future."[58] Alternatively, an employer can establish that it "has an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker."[59]

*No past or future employment*

Under the first scenario, then, Employer must establish that it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future. Here, the Parties appear to agree that Employer has not employed workers to perform the services or labor in the past. Employer asserts that it formed its company in April 2023 and has never hired any workers, a contention which has not been disputed by the CO.[60] Consistent therewith,

---

[51] See *Super Bob's Lawn and Landscaping, LLC*, 2021-TLN-00060, slip op. at 3 (August 27, 2021), citing *Brooks Ledge, Inc.,* 2016-TLN-00033, slip op. at 5 (May 10, 2016).
[52] 20 C.F.R. § 655.61.
[53] 8 C.F.R. § 214.2(h)(6)(ii)(A); 20 C.F.R. § 655.6(a).
[54] The definition of temporary need is governed by 8 C.F.R. § 214.2(h)(6)(ii)(B). Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, Division H, Title I, § 113 (2015). This definition has remained in place through subsequent appropriations legislation, including the current legislation. *See* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Division H, Title I, § 111 (2022).
[55] 8 C.F.R. § 214.2(h)(6)(ii)(B).
[56] *Id*.; 20 C.F.R. § 655.6(a). See also *Alter and Son General Engineering*, 2013-TLN-00003 (November 9, 2012) (affirming denial where the Employer did not provide an explanation regarding how its request fit within one of the regulatory standards of temporary need).
[57] 8 C.F.R. § 214.2(h)(6)(ii)(B)(1).
[58] 8 C.F.R. § 214.2(h)(6)(ii)(B)(1).
[59] 8 C.F.R. § 214.2(h)(6)(ii)(B)(1).
[60] CO's Brief, p. 14; AF, pp. 9, 12-39, 1066.

Employer's Articles of Incorporation were filed on April 13, 2023 and the Internal Revenue Service assigned Employer's Identification Number on April 19, 2023.[61]

The next question is whether Employer has established that it will not need workers to perform the services or labor in the future. The CO found it was unclear whether Employer will continue to exist upon completion of the Avantis contract and that Employer's explanation that the shipbuilding project has a definable end point does not establish that it will not need workers to perform the services or labor in the future.[62] The CO also found the implication that Employer may cease operations does not establish that Employer will not need to perform the same services or labor in its future, because Employer is actually stating that it will need workers to perform the services or labor for the entirety of its existence, or its entire future.[63]

In the primary case advanced by Employer, *Venice Enterprises, Inc*., 2023-TLN-00125 (September 25, 2023), the Board relied on the employer's explicit attestation that it would not require or use the H-2B program in the future when determining that the employer had met its burden to show that it would not need the services or labor in the future.[64] Here, the Board has been given no equally definitive assurance, as any such representations appear to be tentative at best. For example, Employer indicates that "the *current* plan is to *wind down* the company after the ship is completely built" and that "its need is for a limited period of time—a time that is less than the period of its existence," thereby depicting a lack of certainty about the future activities of the company.[65] When using restrictive language about future hiring, Employer appears to tailor such representations to this particular project, indicating it is "perfectly reasonable to assume that the company will not need to build *this* vessel once it has been completed," "[t]he company will not need workers to perform *this* in the future," and "[t]he contracted work the employer is requesting *these* workers to perform has a defined end date."[66] Elsewhere in the record Employer indicates it "*may* wind up when the ship is built…" but also cautions that "[t]he key is not what happens to Intermarine" but rather that "the need for workers to fulfill Intermarine's contractual obligation with respect to *this* ship is time-limited."[67] Employer further indicates that while it "is equally ill equipped to predict the future," it "has never employed workers in this position before and will not need workers to perform *this* work in the future."[68]

Of note, the few pieces of objective documentation submitted by Employer do not provide additional clarity in this regard. Its Contract, which is heavily redacted and refers to a generalized "Supplier" to provide labor services, neither specifically alludes to nor bars the possibility of Employer utilizing future labor or services.[69] Moreover, Employer's Articles of Incorporation do not corroborate a singular purpose tied to the ship in question, instead simply indicating that "[t]he purpose for which this corporation is organized is ANY AND ALL LAWFUL BUSINESS."[70] Accordingly, while the evidence of record does not specifically substantiate the existence of future contractual employment arrangements, neither does it clearly preclude them or the need for related future labor or services.

---

[61] AF, pp. 1100-1104.
[62] AF, pp. 12-39.
[63] AF, pp. 12-39.
[64] *Venice Enterprises, Inc*., 2023-TLN-00125 at 9-10 (September 25, 2023).
[65] AF, pp. 9-10, 1033 (emphasis added).
[66] AF, p. 523 (emphasis added).
[67] AF, p. 9 (emphasis added).
[68] AF, p. 606 (emphasis added).
[69] AF, pp. 608-610. Employer acknowledges that Avantis is a long-term client of its parent company Intermarine and has "taken a special contract for which they are requesting Intermarine's expertise in providing laborers." AF, p. 606.
[70] AF, p. 1103.

However, even if Employer had unequivocally represented that it would not use the H-2B program in the future, such a promise would not necessarily satisfy its burden to establish a "one-time" occurrence. While the Board has previously held an employer's explicit representation indicating it will cease to exist after a project's culmination can support its contention that it will not need the services or labor in the future,[71] the Board has also found unpersuasive an employer's overt indication to that effect when such contention was not supported by the documentation of record.[72]

Perhaps most similar to the factual parameters of this case, the Board found in *CM Labor Solutions, LLC*, concerning an employer newly entering the industrial fabrication business with no history of employed welders, pipe fitters, or other temporary workers, that the CO was reasonable in determining that Employer had not shown it would not need future welders and pipefitters for potential future contracts.[73] In that case, Employer argued its mere representation that it would not hire pipefitters and welders in the future should be sufficient and that it should not be required to prove the negative assertion that it would not hire such workers in the future.[74] The Board found that while it may be correct that one cannot prove a negative, it is nevertheless reasonable for the CO to require the Employer to have a business operations plan or business model consistent with Employer's representation that it would not need the same type of workers in the future.[75] Distinguishing its situation from that in *Plant Process Fabricators, LLC*, 2018-TLN-00162 and 2018-TLN-00163 (October 12, 2018), the Board continued:

> On the other hand, if Employer's expansion into industrial fabrication is only to the extent of its current one-time contract with Kiewit, then the CO's conclusion that it is unclear how this one-time need is actually the need of the Employer, rather than the need of Kiewit Offshore Services, Ltd., is both astute and reasonable. If an employer were allowed to use the one-time occurrence temporary need standard to supply H-2B workers to another business and not be required to show that it is consistent with its own ongoing business operations, then any business could bring in H-2B workers on behalf of another business, on the basis of a single contract, and claim a one-time occurrence temporary need. Under such circumstances, the underlying employer who is contracting for the labor services (in this case, Kiewit) could use serial subcontractors, each claiming a one-time occurrence, to continually supply H-2B workers to the contracting employer, even though the contracting employer could not claim its own temporary need on a one-time occurrence basis. This would clearly circumvent the goals and requirements of the H-2B program, as it could have the end result of providing a permanent workforce to the underlying contracting employer through the H-2B program which is only in place to provide for temporary employment needs on the bases set forth in the regulations.
>
> \*\*\*
>
> If the Employer were not required to prove anything over than it has not employed a certain type of worker in the past to prove a temporary need, then any employer could

---

[71] *Chip Fab Construction Services, LLC,* 2023-TLN-00053, 2023 TLN-00062 (April 10, 2023).
[72] See *RQ Construction, LLC*, 2024-TLN-00028, 2024-TLN-00029, 2024-TLN-00030, 2024-TLN-00031, 2024-TLN-00032, 2024-TLN-00033 (November 21, 2023)(finding Employer failed to meet the first "one-time" occurrence criteria of showing no foreseeable future need for the services or labor when Employer's documentation included bids for future projects).
[73] *CM Labor Solutions, LLC*, 2023-TLN-00077, 2023-TLN-00078 (May 26, 2023).
[74] *Id.*, at 12.
[75] *Id.*

use the program on a one-time occurrence basis, for up to three years without proving a legitimate temporary need in line with its established business plan. For this reason, it is reasonable for the CO to require the Employer to show that its request for temporary workers, as well as its representation that it will not need these workers in the future, is consistent with its ongoing business operations plan.[76]

In this matter, the record contains ambiguous and potentially conflicting statements concerning Employer's future employment activities after the culmination of this project. However, even if Employer were to clearly and consistently represent that it would not seek such labor or services in the future, the foregoing cases reinforce the reasonableness of requiring such a contention to be accompanied by evidentiary support, particularly as the Board has consistently found that the CO is not required to accept the claims of an Employer who does not supply supporting documentation.[77] Indeed, "[t]he burden is on the applicant to provide the right pieces and to connect them so the CO can see that the employer has established a legitimate temporary need for workers."[78] Although the CO requested further explanation and associated documentation in its second *Notice of Deficiency*, Employer's response thereto did not submit any new supportive documentation.[79] Accordingly, given the ambiguous references in the record and the lack of supportive documentation, the CO reasonably concluded that Employer has not shown it will not need workers to perform the services or labor in the future, as necessary to qualify for temporary labor certification based on a "one-time" occurrence.[80]

*Permanent Employment Situation with Temporary Event*

Under the second method of qualifying for a temporary labor certification based on a "one-time occurrence," an employer must establish the existence of "an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker."[81] Here, Employer's arguments have neither clearly established that its underlying employment situation is "otherwise permanent" nor that an event of short duration has created its temporary need.

The CO found that Employer has not demonstrated its employment situation to be "otherwise permanent," as Employer admitted it was created for the sole purpose of entering its contract with Avantis and has not yet hired workers.[82] Additionally, the CO found that Employer has not articulated what temporary event of short duration has created a need for temporary workers, but rather that the "event" (of the shipbuilding contract) lasts for the entirety of the employer's existence and is thus permanent.[83] In contrast, Employer argues that it will not need the workers for the entire length of its existence, but does not challenge the finding that it was created in April 2023 for the purpose of fulfilling its contract with Avantis and has not yet employed workers.[84]

The Board has previously held that that an employer does not qualify for foreign workers under the "one-time" occurrence regulation when it is not a business with a permanent employment situation that it needs to supplement.[85] An entirely temporary business cannot have an "employment situation which is

---

[76] *Id.,* pp. 12-13.
[77] *Id.*, citing *AB Controls & Technology*, 2013-TLN-00022 (January 17, 2013).
[78] *Empire Roofing,* 2016-TLN-00065, pp. 9-10 (September 15, 2016).
[79] AF, pp. 2-512, 523-991.
[80] 8 C.F.R. § 214.2(h)(6)(ii)(B)(1).
[81] 8 C.F.R. § 214.2(h)(6)(ii)(B)(1).
[82] AF, pp. 12-39.
[83] AF, pp. 12-39.
[84] AF, pp. 9, 523, 1066.
[85] *Richmond County Constructors*, 2018-TLN-00164, 2018-TLN-00165, 2018-TLN-00166, and 2018-TLN-00167 (October 5, 2018).

otherwise permanent" for its non-H-2B workforce."[86] Consistent therewith, the primary case relied upon by Employer, *Venice Enterprises, Inc.*, found that where an employer was newly entering the industrial fabrication business and had not previously employed the vocational types it sought to employ, Employer could not show that it has an employment situation that is "otherwise permanent."[87] Such situations are similar to the present case, in which Employer has admittedly never hired workers before and was created solely to fulfill its contract with Avantis, and thus cannot demonstrate an "otherwise permanent employment situation" beyond which there is an increased need thereof due to an event of short duration.

The foregoing rationale notwithstanding, Employer has cited the following shipbuilding example promulgated by DOL in its rulemaking of a "one-time occurrence:"

> A one-time occurrence might also arise when a specific project creates a need for additional workers over and above an employer's normal workforce. For example, if a shipbuilder got a contract to build a ship that was over and above its normal workload, that might be a one-time occurrence.[88]

However, for the same reason noted by the Board in *Richmond County Constructors*, this example is inapposite to the present case:

> The Employer overlooks a key aspect of the example, specifically that the additional ship in the scenario is "over and above" the employer's normal workload.[89]

Here, the current need for pipefitters, welders, and platers is not "over and above" Employer's normal workload but rather constitutes its baseline workforce, as it acknowledged being formed for the very purpose of providing the requested workers to Avantis to build its ship.[90] Thus, Employer has not demonstrated that its need for the currently requested workers properly qualifies as a "one-time occurrence" as articulated by the second scenario within 8 C.F.R. § 214.2(h)(6)(ii)(B)(1).

Moreover, as the Board indicated in *Chip Fab Construction Services, LLC,* where an employer's company was created for the sole purpose of providing contracted labor for a specific project, that employer had not shown that its need was a temporary need, even if it could show its contract represented a "one-time" occurrence:

> Employer has not established the predicate temporary need because a temporary need cannot exist for the entirety of an entity's existence. This is because the applicable regulation requires Employer to establish that "**its** need for non-agricultural services or labor is temporary." Because Employer would "need" these workers as long as Employer exists, **its** "need" for the workers is not temporary, it is permanent.
>
> Stated another way, "[e]mployment is of a temporary nature when the employer needs a worker for a limited period of time." Yet, Employer's need is only "for a limited period of time" when considered in the context of "time" as a general concept.

---

[86] *Id.*
[87] *Venice Enterprises, Inc.*, 2023-TLN-00125 (September 27, 2023).
[88] AF, p. 1031, citing 73 Fed. Reg. 78104 (December 19, 2008).
[89] *Richmond County Constructors*, 2018-TLN-00164, 2018-TLN-00165, 2018-TLN-00166, and 2018-TLN-00167 (October 5, 2018).
[90] AF, p. 523.

Employer's need is <u>not</u> "for a limited period of time" when considered in the context of Employer's existence. Although the <u>project</u> is temporary, Employer's <u>need</u> is permanent because the period of the need is co-extensive with the time period of Employer's existence.[91]

In sum, Employer failed to establish a temporary need based on a "one-time" occurrence for the requested Platers, Pipefitters, and Welders. Accordingly, the undersigned concludes that the CO's decision denying Employer's labor certification Applications was not arbitrary, capricious, or otherwise not in accordance with the law. The CO's decision complies with applicable legal authority, and Employer has failed to establish grounds supporting reversal or remand thereof.

## ORDER

The Certifying Officer's *Final Determination* denying Employer's *Application for Temporary Employment Certification* in the above-captioned consolidated matter is **AFFIRMED**.

**SO ORDERED** this day for the Board:

**CHRISTINE HILLEREN-WILKINS**
**Administrative Law Judge**

---

[91] *Chip Fab Construction Services, LLC,* 2023-TLN-00053, 2023-TLN-00062 (April 10, 2023).