# UNITED STATES DEPARTMENT OF LABOR
## BOARD OF ALIEN LABOR CERTIFICATION APPEALS
### Washington, D.C.

_____

Issue Date: 04 April 2023

OALJ Case No.: 2023-TLN-00064
ETA Case No.: H-400-23003-676129


*In the Matter of:*

M & L CLEANING SERVICES II, LLC,
    *Employer.*


Certifying Officer: ERIN O'CONNELL


## DECISION AND ORDER AFFIRMING DENIAL OF CERTIFICATION

    M & L Cleaning Services II, LLC ("Employer"), requests review of the Certifying Officer ("CO") Erin O'Connell's denial of an application for temporary alien labor certification under the H-2B non-immigrant program. The H-2B program permits employers to hire foreign workers to perform temporary nonagricultural work within the United States on a one-time occurrence, seasonal, peakload, or intermittent basis, as defined by the United States Department of Homeland Security. *See* 8 U.S.C. section 1101(a)(15)(H)(ii)(b); 8 C.F.R. section 214.2(h)(6)(ii)(B);[1] 20 C.F.R. section 655.6(b)[2]. Employers who wish to hire foreign workers under this program must apply for, and receive, labor certification from the United States Department of Labor using Form ETA-9142B, *Application for Temporary Employment Certification* (Form 9142).

    A CO in the Office of Foreign Labor Certification ("OFLC") of the Employment

---

[1] "Temporary need" is defined at 8 C.F.R. § 214.2(h)(6)(ii)(B). Consolidated Appropriations Act 2016, Pub. L. No. 114-113, Division H, Title I, § 113 (2015). This definition has remained in place through subsequent appropriations legislation, including the current legislation. *See* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Division H, Title I, § 111 (2022).

[2] On April 29, 2015, the Department of Labor ("DOL") and the Department of Homeland Security jointly published an Interim Final Rule ("IFR") amending the standards and procedures that govern the H-2B temporary labor certification program. *See Temporary Non-Agricultural Employment of H-2B Aliens in the United States; Interim Final Rule*, 80 Fed. Reg. 24,042 et seq. (Apr. 29, 2015). The rules provided in the IFR apply to applications "submitted on or after April 29, 2015, and that ha[ve] a start date of need after October 1, 2015." IFR, 20 C.F.R. § 655.4(e). All citations to 20 C.F.R. Part 655 in this opinion and order are to the IFR.

and Training Administration, U.S. Department of Labor, reviews applications for temporary labor certification. The CO (acting for the Secretary of Labor, 20 C.F.R. section 655.2, subsection (a)) can issue the labor certification only after determining (1) that there are not sufficient U.S. workers who are qualified and available to perform the work in question and (2) that employment of foreign workers will not adversely affect the wages and working conditions of U.S. workers similarly employed. 20 C.F.R. section 655.1, subsection (a). The burden of proof is on the employer to show it is entitled to labor certification. 8 U.S.C. section 1361.

If the CO denies the application under 20 C.F.R. section 655.53, the employer may request review by the Board of Alien Labor Certification Appeals ("BALCA," or "the Board"). By designation of the Chief Administrative Law Judge, I am BALCA for purposes of this appeal. 20 C.F.R. section 655.61, subsection (d).

## STATEMENT OF FACTS

On November 13, 2022, Employer filed its application, seeking to hire four housekeepers from April 1, 2023, through March 31, 2025, citing one-time-occurrence temporary need (AF[3], p. 107). On January 25, 2023, the CO issued a Notice of Deficiency (AF, pp. 99-105), identifying three areas of concern. First, the CO asked for clarification of the "one-time occurrence" which created the alleged temporary need. Second, the CO asked the employer to explain how it arrived at the number of temporary workers for which it applied.[4] Finally, the CO noted inconsistencies in the Job Order. Employer responded on February 5, 2023 (AF, pp. 65-97). Nevertheless, on March 9, 2023, the CO issued a Final Determination denying the application on the first two grounds raised in the Notice of Deficiency (AF, pp. 53-60).

## Discussion

1. One-Time Occurrence

Under the regulations, there are four ways for an employer to justify a temporary need: as a "one-time occurrence," as a seasonal need, as a peak load need, and an intermittent need:

> Employment is of a temporary nature when the employer needs a worker for a limited period of time. The employer must establish that the need for the employee will end in the near, definable future. *Generally, that period of time will be limited to one year or less,* but in the case of a one-time event could last up to 3 years. The petitioner's need for the service or labor shall be a one-time

---

[3] References are to the Appeal File.

[4] The CO erroneously stated Employer sought to hire two housekeepers, when in fact Employer had applied to hire four (*see* AF, pp. 103, 107).

>occurrence, a seasonal need, a peak load need, or an intermittent need.

(8 C.F.R. section 214.2, subsection (h)(6)(ii)(B).)

And there are *two* different kinds of "one-time occurrence." An employer establishes a "one-time occurrence" when the employer demonstrates

>. . . that it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future, *or* that it has an employment situation that is otherwise permanent, but a temporary event of short duration has created the need for a temporary worker (emphasis added).

(*Id.*, subsection (h)(6)(ii)(B)(1).)

  a. "Has Not Employed Workers to Perform Services or Labor in the Past, and Will Not Employ Workers for Perform Services or Labor in the Future"

In its application, Employer explains,

>We staff various hotels in the U.S. with temporary housekeepers, and we have managed to add several new accounts with temporary contracts on a trial basis. These are 2-year contracts, for work starting on April 1, 2023, and ending March 31, 2025. The contracts for 10 hotels in the following locations in Colorado: Alamosa Colorado Springs, Durango, Forts *[sic]* Collins, Highland, Ranch, and South Fork, are for 20 housekeepers. During the validity of the contract, the hotels will identify the number of temporary workers they will need for the next 12 months. This will allow us time to recruit accordingly. We are aware that these are temporary contracts to fill temporary positions. However, we hope to turn these into permanent contracts if possible. This will be contingent on our performance among other factors.

(AF, p. 123.)

Employer's business, then, is to employ housekeepers to provide cleaning services at various hotels in the United States. It has employed housekeepers to provide those services in the past, and it intends to employ housekeepers to provide those services in the future. Accordingly, it does not have a "one-time occurrence" under the first regulatory definition of that term.

    b. Otherwise Permanent Employment Interrupted by a "Temporary Event of Short Duration"

In its Brief in Support of Request for Administrative Review (AF, pp. 1-6), Employer states,

> The OFLC Certifying Officer conclude *[sic]* that "It is clear that the employer's business model includes obtaining contracts to supply housekeepers in the hotel/motel industry and while the employer's clients' needs may be temporary, the employer's need for workers appears to be permanent."  *While this statement is accurate*, it does not provide the full picture of our operation.  We have a set group of employees who are fixed, and are regularly working at hotels and motels.  We also have a group of employees who work at hotels and motels according to their seasonal needs.
>
> *However, in our effort to expand*, we have signed temporary agreements with 10 hotels.  From the number of workers requested in each contract, it is obvious that we are not their main supplier of housekeepers.  A Comfort Inn Suites and a Mainstay Suites need much more than two housekeepers each.  These are the number of housekeepers we requested in the ETA-9142B application (emphasis added).

(AF, p. 2.)  Here, there is no misunderstanding.  Employer is not hiring foreign workers simply to replace otherwise permanent employees during a temporary absence from work.  Employer intends to hire foreign workers for the purpose of expanding its existing business for at least two years, and perhaps even longer.

In the ordinary sense of the words, perhaps, a "temporary" contract or project is a "one-time occurrence," in that it is only going to be completed once.  But in that sense of the words, *every* temporary contract and *every* temporary project is a one-time occurrence, because every temporary contract or project ends when it is finished.  The regulatory definition of "one-time occurrence," however awkward, is narrower, and excludes hiring non-immigrant workers for the purpose of expanding an existing business.  The first category of "one-time occurrences" is limited by the kind of work the non-immigrant workers will do.  If the non-immigrant workers will do the same kind of work as domestic workers have done in the past, or are intended to do in the future, there is no "one-time occurrence."  The second category of "one-time occurrences" is limited to the temporary replacement of "otherwise permanent" workers, such as when a regular employee is ill, but is expected to return to work.  If the non-immigrant workers, as here, are intended to increase the size of the existing workforce – *even temporarily* -- there is again no "one-time occurrence."  In this case, Employer acknowledges it "would like to make this arrangement permanent" (Employer's Brief, AF, p. 3).  That makes its case for "one-time occurrence" weaker, not stronger.

The CO's job is to protect the wages and working conditions of domestic U.S.

workers by ensuring 1) that employment of foreign workers will not usurp job opportunities for domestic workers, and 2) that employment of foreign workers does not depress wages or working conditions in the domestic labor market.  Employer's interpretation of the regulation would allow employers to hire large numbers of non-immigrant foreign workers for extended periods through the simple expedient of characterizing its ongoing business efforts as a series of discrete "temporary" contracts or projects.  If foreign workers can be employed in the United States indefinitely, working on serial "temporary" projects, they are more likely to displace domestic workers, and depress domestic wages and working conditions.

Employer does not define "temporary need" in the same terms as the regulation does.  But the CO is bound to follow and enforce the regulations.  In this case, I conclude she did.

2.  Number of Non-Immigrant Workers

In its Brief, Employer argues "the number of workers is based on the number of workers requested in the Service Agreement and its corresponding Temporary Worker Request that is attached to each Service Agreement" (AF, pp. 4-5).  As Employer explains,

> This ETA-9142B application is for four specific workers to fill four specific positions outlined in the two specific Service Agreements.  The Service Agreements have a start date and an end date.  They are for a two-year period only.  There is no contingency or clause that provides, or even alludes, for the extension of the contracts.  If I hire four workers for these specific positions, and the contracts end, we will terminate the employment of the four workers.  Without the Service Agreements, we do not have the need to bring in workers for these specific positions.  Hence, our need is temporary – it will last for two years.  Our need is for a one-time occurrence.

(Employer's Brief, AF, p. 3.)

Stated differently, Employer itself has no need for temporary employees except to the extent its potential clients need temporary employees ("Without the Service Agreements, we do not have the need to bring in workers for these specific positions").  Here, again because they interpret "one-time occurrence" differently, Employer misunderstand the CO's question, and does not respond to it.  Employer assumes the CO should allow it to hire as many non-immigrant workers as the Service Agreements may provide work for.  But the CO cannot simply approve a request by Employer's customer, because the CO is charged with ensuring that non-immigrant workers will not displace, or depress the wages or working conditions of, domestic employees in

whatever markets the non-immigrant workers may enter. And Employer cannot explain why its customers want a specific number of employees, presumably because Employer has until now had no reason to ask.

On both grounds, then, I conclude the CO was right to deny certification in this case.

I sympathize with any responsible, tax-paying employer who feels a government agency will cause it to miss out on an opportunity to earn an honest dollar. But in fairness to the CO, there is no right to hire non-immigrant foreign labor except as the law and regulations allow. Employer can hire all the domestic workers it likes, regardless of what the CO thinks about it; but when an employer seeks to hire foreign workers, the CO has a job to do.

## **ORDER**

The Certifying Officer's denial of the Temporary Labor Certification in this case is affirmed.

SO ORDERED.

For the Board:

CHRISTOPHER LARSEN
Administrative Law Judge